IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JUAN J. RODRIGUEZ, | Case No. 3:13-cv-00390-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Alan Stuart Graf, ALAN STUART GRAF, P.C., 208 Pine Street, Floyd, VA 24902; Max Rae, P.O. Box 7790, Salem, OR 97303. Of Attorneys for Plaintiff.

Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, U.S. Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; L. Jamala Edwards, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Juan J. Rodriguez ("Rodriguez" or "Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").

For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

## STANDARDS

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Applications

Rodriguez was born on March 4, 1958 and is currently 56 years old. AR 33. Rodriguez

protectively filed for DIB and SSI on December 2, 2009, alleging a disability onset date of

January 1, 2008. AR 25. The ALJ found that Rodriguez's date last insured was March 31, 2013.

*Id.*

On February 26, 2010, the Social Security Administration denied Rodriguez's

applications for SSI and DIB. AR 78-85. On July 7, 2010, Rodriguez's SSI and DIB claims were

denied again upon reconsideration. AR 90-97. After conducting a hearing on October 19, 2011,

the ALJ issued his decision on November 1, 2011, finding Rodriguez not disabled. AR 25-35,

43-72. Rodriguez appealed the ALJ's decision to the Appeals Council. AR 19. On January 15,

2013, the Appeals Council denied the request for review, making the ALJ's decision the final

decision of the Commissioner. AR 1-4. Rodriguez now seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ applied the sequential analysis in his November 1, 2011 decision. AR 25-35. At step one, the ALJ determined that Rodriguez has not engaged in substantial gainful activity since his alleged disability onset date of January 1, 2008. AR 27. At step two, the ALJ determined that Rodriguez has the following severe impairments: (1) status post eye injury with remaining corneal scar; (2) status post 2003 removal foreign body right eye; (3) left shoulder status post rotator cuff; and (4) left long and left ring finger may need trigger release. AR 27-30. In determining that these impairments were severe, the ALJ relied on letters and medical records from several treating and examining physicians. *Id.* At step three, the ALJ determined that Rodriguez did not have an impairment or combination of impairments that met or medically equals one of the listed impairments. AR 30.

The ALJ next assessed Rodriguez's RFC. *Id.* The ALJ found that Rodriguez has an RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "He has no lifting limitations. He has no walking or sitting limitations. He is limited to jobs that do not require fine visual acuity. He should avoid concentrated exposure to heights, hazards, and heavy machinery." AR 30. In determining the RFC, the ALJ considered Rodriguez's medical records, course of treatment, and activities of daily living. AR 30-33. The ALJ did not find Rodriguez's subjective testimony regarding his impairments to be credible. AR 31-32.

At step four, the ALJ relied on the testimony of a vocational expert ("VE") and found that Rodriguez's RFC precluded him from performing his past relevant work. AR 33. At step five, the ALJ relied on the testimony of the VE and found that based on Rodriguez's age, education, work experience, and RFC, he could perform the requirements of representative occupations such as a laundry worker, usher, and dishwasher.[1] AR 34. The ALJ relied on the VE's testimony that all three of these occupations have jobs available in significant numbers in the national economy. *Id.* Thus, the ALJ found Rodriguez not disabled as defined in the Social Security Act. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding Rodriguez literate and able to communicate in English, and that as a result the VE's testimony was based on an inaccurate depiction of Rodriguez's language skills and was therefore inconsistent with the *Dictionary of*

---

[1] The VE testified that Rodriguez could perform work as a dishwasher, but clarified that the DOT calls the position a "kitchen helper." AR 68; *see also* DOT § 318.687-010, *available at* 1991 WL 672752.

*Occupational Titles* ("DOT"); and (2) affording improper weight to the opinions of two examining physicians, Dr. Brian D. Denekas and Dr. Robert Tibolt.

## A.  Plaintiff's Literacy

"The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001). Because literacy, or education level, is relevant to the inquiry of a claimant's ability to engage in substantial gainful activity and not to the existence of a disability, on which the claimant bears the burden of proof, the Commissioner bears the burden of establishing this factor. *Silveira v. Apfel*, 204 F.3d 1257, 1261 (9th Cir. 2000). The ALJ provided two reasons for determining that Rodriguez is literate and able to communicate in English: (1) a note in which Dr. Jennifer L. Lyons commented that Rodriguez spoke "fairly good" English; and (2) Rodriguez's testimony that he attended school through 12th grade in Mexico City. AR 33, 49-50, 616. The reasons put forth by the ALJ do not support the finding that Rodriguez is literate and able to communicate in English and there is not substantial evidence in the record supporting that conclusion by the ALJ.

The ALJ erred by relying on the comment by Dr. Lyons, in a letter dated April 11, 2011, that Rodriguez spoke "fairly good" English. AR 33, 616-17. In that same letter, Dr. Lyons further explained that Rodriguez was accompanied by his domestic partner Christina Casas and that she acted as an interpreter. AR 616-17. This single comment, taken out of context, is not substantive evidence supporting the ALJ's conclusion, particularly in light of the evidence, discussed below, indicating that Rodriguez is not literate or able to communicate in English.

The ALJ also erred by relying on the fact that Rodriguez attended school in Mexico City, Mexico. There is no evidence in the record that the education Rodriguez received in Mexico was in English. Further, the evidence in the record shows that the vocational training Rodriguez received in construction work was taught by a teacher who spoke Spanish. AR 49-50. Because

neither of these educational experiences indicate Rodriguez was educated in English, they do not support the ALJ's finding that Rodriguez is literate and able to communicate in English.[2]

There is significant evidence in the record, however, that suggests that Rodriguez is not able to effectively communicate in English. At the October 19, 2011 hearing Rodriguez had a Spanish interpreter. AR 45. Rodriguez also had an interpreter present at several of his appointments and examinations with physicians. *See* AR 596, 670, 672. At the hearing Rodriguez testified that he can read Spanish, but not very well, that he has deficiencies with the English language, and that he can neither read nor write in English. AR 49-51. In a Disability Report, Rodriguez's attorney noted that Rodriguez had limited English and could not answer most of the questions when presented in English, and that if further information from Rodriguez was necessary an interpreter should be requested. AR 190-91. In a note from the medical records at Eye Health Northwest, the physician remarked that "[Rodriguez] does not speak English." AR 375. Additionally, in notes from an office visit Dr. Frederick Fraunfelder commented that he and Rodriguez had an extended conversation in Spanish about his condition. AR 444, 446. Dr. Denekas also noted that when Rodriguez came in for an examination he was accompanied by a translator. AR 596, 601. All of this evidence indicates that, contrary to the finding of the ALJ, Rodriguez is not capable of effectively communicating in English.

The hypothetical posed to the VE at the October 2011 hearing did not include any limitations in ability to communicate in English. Based on that hypothetical, the VE concluded that Rodriguez could perform the occupations of laundry worker, usher, and dishwasher. All

---

[2] The Commissioner states that "The record shows that Plaintiff completed his own forms in English, such as a medication list, a list of recent treatment and providers, and his work history." Def.'s Br., ECF 22 at 8 (citing AR 234-36). The evidence in the record shows that the form was handwritten in English and that Rodriguez signed the form. The evidence does not show, however, that Rodriguez himself filled in the medication list, list of recent medical treatment, or work history.

three of these occupations require a reasoning development level of R2, which expects than an employee can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *See* DOT §§ 361.684-014 (*available at* 1991 WL 672983), 344.677-014 (*available at* 1991 WL 672865), 318.687-010. These occupations also require a language development level of L1, which expects that an employee can "[r]ecognize meaning of 2,500 (two- or three-syllable) words"; "[r]ead at rate of 95-120 words per minute"; "[c]ompare similarities and differences between words and between series of numbers"; and "[p]rint simple sentences containing subject, verb, and object, and series of numbers, names, and addresses." *Id.*

Neither the ALJ nor the vocational expert addressed the effect of Rodriguez's language barriers on his ability to find and perform these occupations. The ALJ did not provide the VE with information concerning Rodriguez's literacy or potential deficiencies in English. It does not appear that the VE accounted for any of Rodriguez's language limitations. AR 54, 64-72. For the VE accurately to assess the work that Rodriguez could perform, the VE needs further information regarding Rodriguez's language proficiency. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001) (stating that the ALJ should present hypotheticals that reflect all the claimant's limitations); *see also Pinto*, 249 F.3d at 847-48 (remanding a case so that the ALJ could clarify the effect of a claimant's language skills on the disability determination); *see also Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (requiring an ALJ to explain a deviation between a job description and a claimant's limitations). Because the VE was not presented with any hypotheticals or information regarding Rodriguez's language limitations, the record does not show if Rodriguez could perform the suggested jobs.

The evidence does not "clearly indicate the proper outcome of steps four and five of the disability determination evaluation," thus the Court concludes that the case should be remanded

for further proceedings. *See Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2008); *see also Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits."). On remand, the ALJ shall make further inquiry into the appropriate analysis of Rodriguez's vocational capabilities in light of his language limitations.

**B.  The ALJ's Treatment of the Opinions of Dr. Denekas and Dr. Tibolt**

Rodriguez also argues that the ALJ erred by improperly crediting the conclusions and opinions of Dr. Denekas and Dr. Tibolt. The Commissioner argues that the ALJ properly considered the testimony of these two examining doctors.

The United States Court of Appeals for the Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citation and quotation marks omitted).

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502 at 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another

physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830-31 (citation and quotation marks omitted). Specific, legitimate reasons for rejecting a physician's opinion include reliance on a claimant's discredited subjective complaints and inconsistency with medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

### 1.  Dr. Denekas

Dr. Denekas, a neurologist, performed an independent medical examination of Rodriguez in December 2010, reviewed Rodriguez's medical records, and submitted a report to SAIF Corporation in relation to Rodriguez's worker's compensation claim. AR 596-601. Dr. Denekas administered a neurological examination and documented Rodriguez's subjective symptoms. Dr. Denekas reported that Rodriguez was "having headaches that are not completely under control and do cause limits in his daily activities." AR 600. Rodriguez argues that the ALJ did not incorporate this opinion by Dr. Denekas and did not give any reasons for omitting it.

Rodriguez ignores, however, Dr. Denekas's conclusion immediately following the quoted portion of Dr. Denekas's opinion—that Rodriguez is "independent with activities of daily living and employable." *Id.* Dr. Denekas's report continues, noting the fact that Rodriguez "has not been on any of the typical medications that one can use to prevent headaches" and discussing in detail several medications that Dr. Denekas suggests might control Rodriguez's headaches. *Id.* Thus, Dr. Denekas did not opine that Rodriguez had any limitations that the ALJ failed to include in his assessment. To the contrary, the ALJ incorporated the observations, diagnoses, and recommendations of Dr. Denekas when considering the severity of Rodriguez's limitations and when discussing Rodriguez's credibility. AR 29, 31.

PAGE 11 – OPINION AND ORDER

The fact that the ALJ did not specifically reference the notation by Dr. Denekas reciting Rodriguez's subjective reporting of symptoms was not legal error because the ALJ properly incorporated Dr. Denekas's findings regarding Rodriguez's objective neurological functional limitations and Dr. Denekas's suggestions for a course of treatment to prevent Rodriguez's headaches. Moreover, because the ALJ determined that Rodriguez's subjective reporting of his symptoms was not credible and the notation at issue is based on Rodriguez's subjective reporting of symptoms, it was reasonable for the ALJ to discount that notation. *Bray*, 554 F.3d at 1228 ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

### 2. Dr. Tibolt.

Dr. Tibolt is an opthamologist who administered an examination of Rodriguez on January 13, 2010. AR 526-30. Rodriguez argues that the ALJ erred by discounting Dr. Tibolt's opinion that Rodriguez demonstrated decreased vision at the time of the examination and that Rodriguez's visual symptoms contributed to his inability to work. AR 529. Because Dr. Tibolt's opinion is contradicted by the opinions of Dr. U.J. Berzins, an examining physician, and Dr. Neal Berner, a non-examining physician (AR 32), the ALJ must provide specific and legitimate reasons to reject Dr. Tibolt's opinion. *See Lester*, 81 F.3d at 830-31. The ALJ provided three reasons for giving little weight to Dr. Tibolt's opinion: (1) Dr. Tibolt's opinion is not supported by the medical record as a whole; (2) Dr. Tibolt did not take into consideration Rodriguez's vision if he obtained a corneal transplant; and (3) Rodriguez's testimony that he can watch one-and-a-half hours of television and Rodriguez's employment as a Flagger. AR 32.

The first reason that the ALJ offered for discounting Dr. Tibolt's opinion is that it is not supported by the medical record as a whole. The Court finds this to be a legitimate and specific

reason that is supported by substantial evidence. The medical records indicate that Rodriguez's corrected vision is 20/30 or 20/40 in his right eye and 20/20 in his left eye. AR 377, 440. Dr. Fraunfelder found that Rodriguez had a visual impairment of 35 percent, which translates to "an impairment of the whole person (as contributed by the visual system) totaling 33%." AR 592. Additionally, Dr. Kerry B. Hagen noted hesitancy to recommend surgery because of Rodriguez's "relatively good visual acuity." AR 377. These findings contradict Dr. Tibolt's opinion that Rodriguez's "visual symptoms are contributory to his inability to work." AR 529. Moreover, the ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Court finds that the ALJ provided a specific and legitimate reason, supported by substantial evidence in the record, for discounting Dr. Tibolt's opinion.

The other two reasons provided by the ALJ, however, are not specific and legitimate reasons supported by substantial evidence in the record. First, the fact that Dr. Tibolt did not account for Rodriguez's potential improvement with a corneal transplant is not a legitimate reason to discount Dr. Tibolt's opinion. Assessing the potential improvement that a corneal transplant may have afforded Rodriguez would be speculative and is irrelevant to Dr. Tibolt's analysis of Rodriguez's current visual impairment. Rodriguez's failure to pursue treatment, although relevant to Rodriguez's credibility, is not a specific and legitimate reason to discount an examining physician's opinion.

Second, Rodriguez's prior employment as a Flagger and current ability to watch television does not discredit Dr. Tibolt's opinion. The testimony transcript indicates that Rodriguez worked as a Flagger for only one four-hour shift. AR 54. One brief shift as a Flagger does not demonstrate inconsistency between Rodriguez's impairment and Dr. Tibolt's opinion.

Additionally, the testimony that Rodriguez could watch television for one-hour-and-a-half related to his ability to watch television without getting a headache, it does not indicate the quality of his vision and contradict Dr. Tibolt's opinion.

Because the ALJ offered a specific and legitimate reason for discounting Dr. Tibolt's testimony, the Court finds that the ALJ did not err in evaluating Dr. Tibolt's opinion.

## C.  Plaintiff's Credibility

Although Rodriguez did not raise the issue of the ALJ's credibility analysis in Rodriguez's opening brief, the Commissioner, for reasons that are unclear to the Court, defended the ALJ's credibility analysis in its response brief. In Rodriguez's reply brief, he argues that the ALJ improperly discredited Rodriguez's subjective testimony. Although this issue was not properly preserved on appeal, the Court has reviewed the record in light of the arguments made by Rodriguez in his reply brief and finds that the ALJ provided the following clear and convincing reasons for discrediting Rodriguez's subjective testimony: (1) Rodriguez's conservative treatment of his headaches and pain; (2) the inconsistencies between Rodriguez's activities of daily living and his allegations of disability; and (3) the lack of support in the medical record for the alleged severity of Rodriguez's impairments. AR 31-32. Because these three clear and convincing reasons are supported by substantial evidence in the record, the Court upholds the ALJ's credibility determination. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

## CONCLUSION

The Commissioner's decision that Rodriguez could effectively communicate in English is not based on substantial evidence in the record. Therefore, the Commissioner's conclusion that Rodriguez could perform work that exists in sufficient numbers in the national economy did not

include Rodriguez's language limitations. The Commissioner's decision is REVERSED, and the

case is REMANDED for further proceedings consistent with this Order.

**IT IS SO ORDERED**.

DATED this 9th day of May, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge